UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROY PRETTY HOLMES,

    Petitioner,

v.                                           Case No. 2:12-cv-40
                                               HON. GORDON J. QUIST

JEFFREY WOODS,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Roy Pretty Holmes filed this petition for writ of habeas corpus challenging his conviction after a plea to assault with intent to commit murder, assault with intent to commit armed robbery, felonious assault and felony firearm. Petitioner attempted to take gold rimmed glasses from a man outside a store. When the victim's friend pulled a gun out, petitioner shot the friend. A police officer then shot petitioner after petitioner refused to put down his shotgun. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

    Petitioner alleges that:

    I. Petitioner should be allowed to withdraw his plea to assault with intent to murder as he lacked the required intent to kill.

    II. Petitioner was denied effective assistance of counsel.

    III. Petitioner's plea was not knowing, understanding or voluntary.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find

a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that he should be able to withdraw his plea because he did not have the required intent to murder and his plea was not knowing and voluntary. The constitutional validity of a guilty plea or no contest plea entered in the state courts is to be judged under the due-process standard set forth by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238 (1969). Under *Boykin*, a plea must be knowing and voluntary in order to withstand scrutiny under the Due Process Clause. A criminal defendant enters a plea knowingly when he understands the

- 3 -

nature of the charge and the "direct consequences" of his guilty plea. *See Brady v. United States*, 397 U.S. 742, 748 (1970). In general, a defendant is aware of the direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir.), *cert. denied*, 504 U.S. 1222 (1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir.), *cert. denied*, 502 U.S. 816 (1991).

When a state prisoner brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see Parke v. Raley*, 113 S. Ct. 517, 523 (1992). In the present case, after a thorough interrogation of petitioner, the state judge found that petitioner's plea of no contest was entered knowingly and voluntarily. Petitioner was informed of the maximum sentences for each crime, that he would be giving up the right to proceed to trial, that he would give up the right to claim that his plea was not his own choice, that the factual basis of the plea would derive from the police reports and transcripts, and that a no contest plea would mean that the court would find petitioner guilty. Further, petitioner was informed that under criminal law a no contest plea was treated in the same manner as if he pleaded guilty. As part of the plea agreement, petitioner pleaded no contest to two counts and the prosecution dismissed two counts and all the supplemental information. Docket #12, No Contest Plea.

Further, to the extent that petitioner argues that the trial court erred by not establishing a proper factual basis for his plea, petitioner has failed to raise a cognizable habeas

claim. A state court is not required under the Constitution to establish a factual basis for a guilty plea. *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975). "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989).

Petitioner asserts that he received ineffective assistance of counsel because his counsel's estimated sentence was lower than the sentence that he received and because counsel did not involve petitioner in the preparation of petitioner's defense. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Petitioner's ineffective assistance of counsel claims were rejected by the trial judge after petitioner's second motion to withdraw his plea. Docket #16, Motion to Withdraw Plea, March 12, 2010. The trial court explained:

> I acknowledge the argument being made here today for ineffective assistance of counsel, but even reading the transcript and what counsel had to say, and things of that nature, I think it's clear that the defendant perhaps was given advice by Mr. Pebley, that Mr. Pebley believed a certain guideline range would apply. My recollection – correct me if I'm wrong – my recollection of the guideline range that Mr. Pebley thought would apply was one of three options that he thought might exist, and he was on the middle one, he thought, one I think he advised his client, that that would be the one he thought would be properly scored. Ultimately the Court scored it the higher one.
>
> But I think it's worth noting that the minimum sentence that the Court handed down is within a few months, maybe 12, 14, 15 months, I don't remember exactly what it was, above the top end of the guideline range which I believe Mr. Pebley felt was likely to apply, and which I think he advised his client was likely to apply. With that in mind, I'm having a hard time understanding why the defendant should be surprised here.

> I think he – I think the record reflects that he was told that one of three scenarios could exist relative to the guidelines scoring. Clearly he was told that the guidelines scoring was not part and parcel of the plea agreement. For whatever reason, the defendant wanted to plead no contest rather than plead guilty. The Court allowed that to happen. And once someone pleads no contest and I'm to look at the evidence that's available to me, make a determination whether that evidence supports conviction or not, the case is rather noteworthy in that the defendant, during the course of a robbery in the parking lot of an establishment here in Grand Rapids, defendant was somehow engaged in taking glasses from another individual, in a forceful way as I recall, and the victim had a friend or someone who was in a car nearby. The friend got out of the car and did some things to cause maybe the – maybe the defendant to be concerned. The defendant, who was armed at the time, shot the person who got out of the car. And an important rationale for the Court determining, pursuant to a no-contest plea, that this was an appropriate basis for an assault with intent to commit murder is that given the distance involved, given the limited part of the victim's body that was apparent to the defendant, he was – he struck the defendant [sic] in the head, he shot him – he was shot in the head. Fortunately for everyone the bullet grazed the victim and didn't do any serious damage, but I think it's – you don't have to be a medical doctor to know that if the shot was a couple inches to the left or right or whatever, it could have resulted in death very easily.
>
> And I think those facts, when he clearly shot at someone, he had no – in my mind, no legitimate basis for doing so, given the distance involved, given the fact that the person was visible – really not that much of his body because he was behind the car – his head was visible, the defendant struck the victim's head, grazed him. Given all those circumstances, I felt that there was enough there. Now, maybe if he'd pled guilty and he'd said at the time, you know, "I just never had an intention to kill," that might be a different thing, I wouldn't have accepted it. But he wanted to plead no contest, and then I look at other facts to see whether there's adequate evidence to support that. And I think, clearly, a jury hearing that could have come to the conclusion that that was the defendant's intent.
>
> As top the sentence, because clearly that was something that was of some concern to the defendant, I think a fair reading of this suggests that if he'd been sentenced differently, we wouldn't have this here today. But after this occurrence and the arrival of the police, the defendant, still armed, hid behind a dumpster behind this particular business in question. Two police officers went back there and

- 7 -

> approached the defendant. Defendant, as I recall, refused to comply with the directives to drop the weapon, and in fact was, as I recall, was beginning to raise the weapon and one of the officers, if not both, made a rather – made an on-site decision to fire. And from everything I can see, it was a proper decision to make.

*Id.* at 9-12.

Similarly, the court rejected petitioner's claim that counsel was ineffective for not being prepared for a trial in this matter and that petitioner was not involved in the preparation. The court explained:

> Also, as to the issue of preparation and all of that. I don't recall anybody asking for an adjournment of the trial, if there was a problem, if the defendant didn't want – was uncomfortable pleading no contest at the time. I don't recall anything about Mr. Pebley's comments suggesting he wasn't ready, willing and able to provide a defense for the defendant. He's a capable and experienced criminal defense lawyer. But if that were an issue, I suppose we could always have talked about an adjournment. But as the prosecutor notes here as well, they were ready to go to trial, and this was done within a few days prior to trial. These things weren't explained. The defendant was asked, does he really want to plead or not, and basically he said yes. Did he understand the plea offer? And he said yes. And the terms of that I think were gone over in some considerable detail.
>
> And again, as to the issue of the assault with intent to kill, and now I have an affidavit that defendant says he didn't intend to kill anybody, well, again, if he'd have pled guilty and I tried to get a factual basis from him and he told me in court that he didn't intend to kill anybody, I wouldn't have accepted the plea. But this is after the fact, and he elects to plead no contest instead, for probably good reasons, didn't remember or whatever. If that's the case, he wouldn't remember whether he intended to kill or not, too. But in any event, we took the no-contest plea at his request, and now because he's unhappy with the sentence – which I think was a very fair sentence under all the facts and circumstances as I understand them to be – now he wants to go back and to have another day in court. And the prosecutor was ready to proceed, witnesses were lined up. I can't say this would be without prejudice to the prosecution under the circumstances we have here.

*Id.* at 14-15.

In the opinion of the undersigned, petitioner cannot show that he received ineffective assistance of counsel in this matter. Nor can petitioner show that the Michigan court decisions were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or were based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: December 22, 2014